Jimmie SHAW, Petitioner

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (MELGRATH
GASKET CO.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 12, 2010.

Decided April 21, 2010.

Marla A. Joseph, Jenkintown, for peti-
tioner.

Lawrence Doherty, Elkins Park, for respondent.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Jimmie Shaw (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which reversed a Workers' Compensation Judge's (WCJ) determination granting Claimant's Petition for Review of Utilization Review Determination (UR Petition), vacating the underlying Utilization Review Determination (UR Determination), and dismissing Melgrath Gasket Co.'s (Employer) Utilization Review Request (URR). On appeal, this Court must determine whether the medical provider under review sufficiently complied with the URR where he timely mailed Claimant's medical records to Margroff Review Services ("the URO"), an authorized Utilization Review Organization, on a password-protected CD–ROM but failed to ever disclose the password to the URO.

Claimant was injured at work on December 5, 1988 and began receiving workers' compensation benefits. On November 19, 2007, Employer filed a URR for "any and all prescriptions for medications prescribed to Claimant." (URR ¶ 11.) On November 27, 2007, the Bureau of Workers' Compensation (Bureau) issued a Notice of Assignment of Utilization Review Request to the URO. That same day, the URO sent a letter to Alan Bailer, D.O., the medical provider whose care was under review, requesting that he:

> forward all of the true and complete medical records for the entire course of treatment rendered to [Claimant] for the work-related injury (§ 127.462) to [the URO]'s office ... within 30 days of

the date of this letter. (We are requesting all medical records in your possession from 12/05/1988 and onward)" (the Letter).

(Letter from the URO to Dr. Bailer (November 27, 2007) ("the Letter") at 1; R.R. at 6a (emphasis omitted).) The Letter also indicated that, as the medical provider under review, Dr. Bailer *"MUST* include the enclosed provider verification form ... § 127.459(c) [verifying] to the best of his knowledge, the medical records provided constitute the true and complete medical chart as it relates to the employee's work injury." (The Letter at 1; R.R. at 6a (emphasis in original).) Moreover, the Letter informed Dr. Bailer that if he "fails to mail records to the URO within 30 days of the date of request of records, the URO shall render a determination that the treatment under review was not reasonable or necessary." (The Letter at 2; R.R. at 7a.) The Letter clearly indicated that the records must be mailed to the URO by December 28, 2007, and that the URO "will consider the records as timely if the envelope containing the records contains a valid U.S.P.S. Postmark on or before **December 28, 2007."** (The Letter at 2; R.R. at 7a (emphasis in original).)

On December 24, 2007, Dr. Bailer mailed a CD–ROM containing Claimant's medical records to the URO. In accordance with past custom and practice, Dr. Bailer encrypted the records, thereby requiring a password for the records to be viewed. The URO received the medical records from Dr. Bailer on December 27, 2007, but the URO could not read the CD–ROM. That same day, the URO telephoned Dr. Bailer and left a telephone message advising him that the CD–ROM could not be downloaded and that he had one day to provide paper medical records. Thereafter, the URO sent the unviewed CD–ROM back to Dr. Bailer "but made no

further attempts to review the records or to contact [Dr. Bailer]." (WCJ Decision, Findings of Fact (FOF) ¶ 8.) On January 17, 2008, the URO issued a UR Determination holding that the healthcare under review was unreasonable and unnecessary pursuant to 34 Pa.Code § 127.464 because Dr. Bailer failed to supply the requested medical records. (UR Determination, R.R. at 4a.) On February 11, 2008, Claimant filed the UR Petition and submitted the deposition testimony of Dr. Bailer in support thereof.

Dr. Bailer testified that he received the Letter and signed a postal form acknowledging receipt on November 29, 2007. (FOF ¶ 11b.) Dr. Bailer testified that he took steps to provide the URO with Claimant's medical records by copying Claimant's records to a CD–ROM encrypting it with a security password, as he has done in the past, because the medical records were voluminous and because he wanted to keep the records secure. "Dr. Bailer used a 128–bit encrypted program to protect the records," but he "did not send the password with the CD to preserve the security of the information." (FOF ¶ 11c.) Dr. Bailer testified that he sent the CD–ROM to the URO on December 24, 2007, and did not hear from the URO "until it communicated that it could not open the CD and that Dr. Bailer had one day to provide paper records to [the URO]. [The URO] never requested the password to the encrypted CD." (FOF ¶ 11d.)

In opposition to the UR Petition, Jennifer Margroff, owner of the URO, testified that her due date for a determination was January 31, 2008. Ms. Margroff testified that the URO sent the Letter to Dr. Bailer requesting that the medical records be mailed to her by December 28, 2007. She indicated that she did receive a CD–ROM from Dr. Bailer on December 27, 2008, but she was unable to open the CD. Ms.

Margroff testified that on December 27, 2007, at 4:18 p.m. and 4:25 p.m., she telephoned Dr. Bailer's two medical offices and left messages "informing Dr. Bailer that she was unable to download the CD and 'that he must physically copy the medical records and mail them by the following day.'" (FOF ¶ 12c (quoting Margroff Dep. at 18, R.R. at 45a).) The URO heard nothing further from Dr. Bailer, and so, on January 17, 2008, the URO issued a UR Determination that the treatment under review was neither reasonable nor necessary and attached a "No Records Determination Cover Letter." (R.R. at 5a.) In the No Records Determination Cover Letter, the URO stated:

> **The 30th day (due date) for the medical records was December 28, 2007.** The provider under review has failed to mail the medical records and signed provider verification form by the due date as indicated above. Therefore, the determination is being processed according to § 127.464 relating to the effect of failure of the provider under review to supply records.

(No Records Determination Cover Letter, R.R. at 5a (emphasis in original).)

Based on the evidence presented, the WCJ found Dr. Bailer's testimony credible and persuasive and further found that Dr. Bailer "mailed the CD containing the Claimant's medical records on December 24, 2007, prior to the deadline of December 28, 2007." (FOF ¶ 13.) The WCJ also credited Ms. Margroff's testimony "to the extent that her actions were consistent with her notes regarding this case" and found that Ms. Margroff received the CD from Dr. Bailer prior to the deadline. (FOF ¶ 14.) The WCJ also found that Dr. Bailer acted reasonably and consistent with his obligations to protect the privacy of Claimant's medical records. However, the WCJ found the URO's conduct unrea-

sonable because "the URO, upon receipt of the CD, should have requested the password or sought further assistance in order to review the records. Instead, by telephoning the Provider late in the afternoon and mandating that the Provider supply all records in paper form within 24 hours, the URO did not act reasonably or appropriately under the circumstances." (FOF ¶ 15.) The WCJ emphasized that Dr. Bailer attempted to supply all of Claimant's medical records to the URO in a timely fashion. Therefore, the WCJ concluded that the UR Determination, finding the treatment under review was neither reasonable nor necessary because of lack of records, was arbitrary and capricious, and thus, the WCJ held that it lacked jurisdiction to hear the UR Petition. *See County of Allegheny v. Workers' Compensation Appeal Board (Geisler)*, 875 A.2d 1222, 1228 (Pa.Cmwlth.2005) (stating that a "WCJ lacks jurisdiction to determine the reasonableness and necessity of medical treatment . . . if a report by a peer physician is not prepared"). Accordingly, the WCJ granted the UR Petition, vacated the UR Determination, and dismissed Employer's URR.

■ Employer appealed the WCJ's order, and the Board reversed. The Board held:

> After a careful review of the record, we conclude that the WCJ erred in finding that Provider reasonably complied with the URO's request for records when he submitted Claimant's medical records on a password protected CD, but withheld the password required to open those records. First, we note that this is an issue of first impression as our research has uncovered no case law or

regulations specifically dealing with the type of media that may be utilized in the submission of medical records to the URO. We, however, like the WCJ, do not determine any error in Provider's decision to submit medical records to the URO on a CD. Nonetheless, we believe that Provider should have made a reasonable effort to ensure that the records contained on the CD were accessible to the URO.

Here, Provider encrypted the records and added a password protect feature to the CD. Provider admitted that he failed to provide the URO with the password to access Claimant's medical records on the CD. He further failed to inform the URO that the CD was encrypted and the password protected. Although Provider cited to security reasons for his failure to inform the URO of the password required to access the medical records, this does not explain his failure to inform the URO that a password was required to open the CD or how the URO might go about obtaining the password. Rather, when questioned as to why he did not contact the URO with the password after learning that the records on the CD could not be accessed, Provider stated that he thought it was the URO's "obligation to find out how one opens it if one is inept at opening records." (Provider Dep., 05/05/08, Pg. 15). Under these circumstances, we cannot agree that Provider reasonably complied with the URO's request for medical records, and we must therefore reverse the WCJ's Decision.

(Board Decision at 7.) Claimant now petitions this Court for review.[1]

---

1. This Court's "scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence." *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel*

■ Section 306(f.1)(6) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531(6),[2] authorizes the UR process as an impartial review of the reasonableness or necessity of medical treatment rendered to, or proposed for, work-related injuries and illnesses. UR "was intended to be fair, prompt and efficient ... [by giving] providers the opportunity to defend their treatment of a claimant, and it required that a review of their treatment regimen was to be conducted by a health care professional in the same field." *Geisler,* 875 A.2d at 1226. Regulations relating to UR and peer review are set forth in 34 Pa.Code §§ 127.401–127.670. Specifically, Section 127.459 of the regulations provides that after a Utilization Review Organization requests medical records from a provider, "the provider under review, or his agent, shall sign a verification that, to the best of his knowledge, *the medical records provided* constitute the true and complete medical chart as it relates to the employe's work-injury." 34 Pa.Code § 127.459 (em-

phasis added). The effect of the failure of a provider to mail a claimant's medical records to the Utilization Review Organization in a timely fashion is set forth in Section 127.464 of the regulations, which provides:

§ 127.464. Effect of failure of provider under review to supply records.

(a) If the provider under review *fails to mail records to the URO* within 30 days of the date of request of the records, the URO shall render a determination that the treatment under review was not reasonable or necessary, if the conditions set forth in subsection (b) have been met.

(b) Before rendering the determination against the provider, a URO shall do the following:

(1) Determine *whether the records were mailed* in a timely manner.

(2) Indicate on the determination that the records were requested but not provided.

*Bakery),* 677 A.2d 1314, 1317 n. 4 (Pa. Cmwlth.1996).

**2.** Section 306(f.1)(6) of the Act provides:

(6) Except in those cases in which a workers' compensation judge asks for an opinion from peer review under section 420, disputes as to reasonableness or necessity of treatment by a health care provider shall be resolved in accordance with the following provisions:

(i) The reasonableness or necessity of all treatment provided by a health care provider under this act may be subject to prospective, concurrent or retrospective utilization review at the request of an employe, employer or insurer. The department shall authorize utilization review organizations to perform utilization review under this act. Utilization review of all treatment rendered by a health care provider shall be performed by a provider licensed in the same profession and having the same or similar specialty as that of the provider of the treatment under review. Organizations not au-

thorized by the department may not engage in such utilization review.

(ii) The utilization review organization shall issue a written report of its findings and conclusions within thirty (30) days of a request.

(iii) The employer or the insurer shall pay the cost of the utilization review.

(iv) If the provider, employer, employe or insurer disagrees with the finding of the utilization review organization, a petition for review by the department must be filed within thirty (30) days after receipt of the report. The department shall assign the petition to a workers' compensation judge for a hearing or for an informal conference under section 402.1. The utilization review report shall be part of the record before the workers' compensation judge. The workers' compensation judge shall consider the utilization review report as evidence but shall not be bound by the report.

77 P.S. § 531(6).

(3) Adequately document the *attempt to obtain records from the provider under review,* including a copy of the certified mail return receipt from the request for records.

(c) If the URO renders a determination against the provider under subsection (a), *it may not assign the request to a reviewer.*

34 Pa.Code § 127.464 (emphasis added).

Claimant contends that "[t]he URO's failure to request the password that would have allowed it to review claimant's medical records serves as a legally insufficient basis for the URO to conclude that the provider *failed to provide medical records* and warranted a determination that the treatment under review was neither reasonable nor necessary." (Claimant's Br. at 3 (emphasis added).) Claimant argues that 34 Pa.Code § 127.464, relating to the effect of a provider's failure to timely mail a claimant's medical records to the URO, is inapplicable here "because the records were timely mailed." (Claimant's Br. at 3.) Claimant contends that the WCJ's factual findings support this argument because the WCJ found that "on December 24, 2007, three days before the December 27, 2007 deadline[,] . . . Dr. Bailer mailed a CD containing Claimant's medical records to [the URO]." (Claimant's Br. at 3; FOF ¶ 4.) Claimant contends that 34 Pa.Code § 127.464 only requires that a provider mail records to a URO within 30 days of the date of the request, and does not require a provider to "supply records on paper or in an insecure, unencrypted format." (Claimant's Br. at 4 (emphasis omitted).) Moreover, Claimant contends that "[e]ncrypting the medical data so that

it could not be accessed without a password held by Dr. Bailer was reasonable and appropriate under the circumstances," and that "the URO did not have appropriate procedures in place to address electronic medical records and did not make a sufficient effort to obtain records from Dr. Bailer." (Claimant's Br. at 7, 9.) As such, Claimant argues that the Board's decision that Dr. Bailer did not reasonably comply with the URO's request for medical records should be reversed.

■  Employer does not dispute that Dr. Bailer sent the CD–ROM to the URO within 30 days of the date of the request; rather, Employer contends that the issue is whether the mailing of the CD–ROM, whose *contents were inaccessible* due to an encrypted password that was not disclosed to the URO, satisfied the requirement of providing the URO with Claimant's medical records. We agree with the way in which Employer frames the issue, and will address that issue now.[3]

■  Claimant is correct that 34 Pa.Code § 127.464 does not specifically address the format in which medical records must be supplied to a Utilization Review Organization upon request. However, implicit in that regulation is the requirement for the provider to *supply the medical records* of a claimant in a *useable* format or mode that allows the Utilization Review Organization to engage in the review process. The review process is set forth in the regulations, which require the Utilization Review Organization to forward the received medical records from the provider to a reviewer, licensed and specialized in the same

3.  Claimant's brief dedicated considerable discussion to Dr. Bailer's practice of transmitting medical records electronically using physical safeguards to protect the privacy of Claimant. (Claimant's Br. at 4–7.) The Board, as well as this Court, commends Dr.

Bailer's effort to protect the confidentiality of Claimant's medical records and for adhering to this practice pursuant to state and federal laws and policies. However, we agree with Employer that Dr. Bailer's mode of transmitting and securing records is not at issue.

area as the provider under review, so that the reviewer may make a determination on the merits of a claimant's medical treatment. 34 Pa.Code §§ 127.466, 127.471(a). The reviewers are required to file written reports in support of their determinations, indicating, *inter alia*, the records they reviewed, whether they contacted or attempted to contact the provider, their findings and conclusions, and an explanation of their reasons, based on generally accepted treatments, protocols and medical literature. 34 Pa.Code § 127.472. The reviewer then forwards his or her determination to the Utilization Review Organization, which issues the official UR determination. "Neither a WCJ nor the Board has jurisdiction to determine the reasonableness of medical treatment unless and until a report is issued [by a reviewer] and the URO issues a determination." *Geisler*, 875 A.2d at 1226. None of these review procedures are possible, and the purpose behind 34 Pa.Code § 127.464 is thwarted, if a provider fails to send useable and readable medical records to the Utilization Review Organization.

Here, Dr. Bailer timely mailed a CD–ROM, purportedly containing Claimant's medical records, to the URO but failed to either inform the URO of the encrypted password or provide directions on how the URO could gain access to the records. Essentially, the failure to provide the URO

the password to the CD–ROM rendered the records contained therein useless because, without access to those records, the URO could not forward the records to a peer review. In other words, the CD–ROM received by the URO was the equivalent of a blank CD–ROM. While we agree with the Board that there is no rule or regulation prohibiting Dr. Bailer from sending the medical records on CD–ROM and that Dr. Bailer did nothing improper by securing the contents of the CD–ROM by password, we conclude, like the Board, that Dr. Bailer acted unreasonably by failing to inform the URO about how it could open the file. Dr. Bailer had two opportunities to do so: (1) he could have indicated in the note accompanying the CD–ROM that the file was encrypted for security and required a password to open, which Dr. Bailer would provide at a later time when secure; or (2) he could have returned Ms. Margroff's telephone call on December 27, 2007.[4] Instead, Dr. Bailer did nothing, and as such, the URO had no other option than to issue a determination finding the medical treatment unreasonable and unnecessary under 34 Pa.Code § 127.464 because of Dr. Bailer's failure to mail medical records, in a useable form, to the URO. To conclude otherwise would thwart the UR process in general.

Accordingly, we affirm the order of the Board.[5]

4. There is neither a factual finding made by the WCJ, nor evidence to suggest, that Ms. Margroff was aware that a password was needed to open the file on the CD–ROM. Further, the credited evidence suggests that Ms. Margroff notified Dr. Bailer of her inability to open the file the day she received the CD–ROM from Dr. Bailer. While Ms. Margroff did not specifically ask Dr. Bailer for the password to open the file in her telephone message on December 27, 2007, Dr. Bailer was on notice that Ms. Margroff was unable to open the file on the CD–ROM, which he encrypted with a secret password. (*See* Bailer Dep. at 13–15 (indicating that he was

aware of Ms. Margroff's inability to open the file); FOF ¶ 8.) As such, we cannot agree with the WCJ's conclusion that the URO "did not act reasonably or appropriately under the circumstances." (FOF ¶ 15.)

5. We note that Employer argues in its brief that Dr. Bailer failed to comply with 34 Pa. Code § 127.459(c), by not submitting a signed verification form to the URO as requested by the URO in the Letter and as required by regulation. We need not address this argument because of our disposition on the first issue. However, were we to reach this issue, a remand would be necessary because the

## ORDER

NOW, April 21, 2010, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby **AFFIRMED.**

WCJ made no factual findings as to whether Dr. Bailer complied with Section 127.459(c), and the Board did not address this issue.